UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYED MUEED ALAM, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-680 |
| | § | |
| KRISTJEN NIELSEN, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM & ORDER

The story of immigration in American life, it has been said, is a "complicated history of inclusion and exclusion." *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 526 (5th Cir. 2013) (Higginson, J.). At times to further inclusion, at other times to further exclusion, the federal government "has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. U.S.*, 567 U.S. 387, 394 (2012). Even with that power's breadth, acts of exclusion have "unfolded according to law, but also contrary to law." *Villas at Parkside Partners*, 726 F.3d at 526. This case arises from the government's use of its power to exclude Petitioner Syed Mueed Alam from the United States. Alam contends that the government has acted contrary to law. This Court must decide whether that is so.

A father of three who overstayed his visa nearly two decades ago so his daughter could obtain health care, Alam is now in the custody of U.S. Immigration and Customs Enforcement (ICE). His petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenges that custody as a violation of federal regulations, 8 C.F.R. pt. 241, and a deprivation of due process. (Doc. No. 1.) Respondents—officials, departments, and contractors of the federal government—have

1

moved to dismiss Alam's petition, challenging this Court's jurisdiction over its subject matter. (Doc. No. 10.) In recognition of the jurisdictional question's complexity, the Court has thus far stayed the removal of Alam. (Doc. No. 9, 14.) In the interim, amici have added to the parties' briefing on the jurisdictional question, advancing a theory distinct from Alam's. (Doc. No. 20.)

Respondents have offered no justification for taking this man from his family and his home after so many years of harmless presence here, and the Court can think of none. It is to this Court's regret, therefore, that Alam's petition fails. It fails not for this Court's lack of subject-matter jurisdiction to consider his regulatory claims, but because those regulations furnish no protection to a person in his unfortunate position. In furtherance of exclusion, Congress has laid out a short and straight path by which the Executive may remove people whose presence here violates the law. The Executive has adopted regulations to serve that purpose, the lawfulness of which Alam does not challenge. A court's role "is not to assess the optimal immigration policies for our country." *City of Chicago v. Sessions*, --- F.3d ---, 2018 WL 1868327, at *1 (7th Cir. Apr. 19, 2018). In carrying out its role, a court must abide the separation of powers, "one of the bedrock principles of our nation, the protection of which transcends political party affiliation and rests at the heart of our system of government." *Id.* Sometimes the separation of powers counsels judicial action. *See id.* Here, however, it counsels the opposite. This Court is not "compelled to find the government's action in this case fair or just." *Cf. Ortiz v. Sessions*, 857 F.3d 966, 967 (9th Cir. 2018) (Reinhardt, J., concurring). But it is compelled to find it lawful.

Grateful for the efforts of the parties and amici, mindful of the momentous stakes, but cognizant of its role in our system of government, the Court must grant Respondents' Motion to Dismiss.

# I

Alam, a native and citizen of Pakistan, was born there in 1965. (Doc. No. 1 at 3.) He brought his family to the U.S. in July 2000 on tourist visas so that one of his daughters could obtain medical care that was unavailable in Pakistan for "a life threatening condition." (*Id.*) Letters from American and Pakistani doctors attest to her condition's hazards and to the availability of treatment here but not there. (Doc. No. 1-1 at 26–35.)

Alam's visa permitted him to be here only six months. (Doc. No. 8-2 at 1.) In March 2003, the government initiated proceedings against Alam for overstaying his visa. (*Id.*) Alam sought asylum, withholding of removal, and relief under the Convention Against Torture,[1] but an Immigration Judge rejected his application. (Doc. No. 1 at 4.) In May 2004, the judge permitted Alam to depart voluntarily, but instead, he remained in the U.S., appealing his case to the Board of Immigration Appeals. (Doc. No. 8-2 at 1–2.) The Board dismissed his appeal in 2005, and the Fifth Circuit dismissed his petition for review in August 2006. (Doc. No. 1 at 4.) ICE then took Alam into custody that November. (*Id.*) The next month, however, Alam was released under an Order of Supervision. (*Id.*) The Order, dated December 28, 2006, permitted Alam to be "at large" in the U.S., provided that he reported when ordered and complied with other conditions. (Doc. No. 1-2 at 34.) Alam supplies that Order as an exhibit, and it bears many stamps showing that he reported as required over the intervening years. (*Id.* at 35.)

For a decade afterward, ICE stayed Alam's removal, one or two years at a time. He obtained his first stay, via a letter dated August 2007, from the ICE field office director. (Doc. No. 1-1 at 37.) Relying on 8 C.F.R. § 241.6, the ICE official cited the medical needs of Alam's

---

[1] Alam's filings do not make clear why he feared a return to Pakistan. The exhibits concerning his daughter's health condition and need for medical care suggest a link between her condition, the perception of that condition in Pakistani culture, and his fear of returning there. Alam has chosen to be discreet, however, and in respect for his family's privacy, the Court declines to speculate.

daughter as the justification. (*Id.*) Alam also provides letters dated September 2015 and December 2016, granting one-year stays for the same reason. (*Id.* at 40–41.) In the interim, Alam and his family lived peacefully in the Houston area. (Doc. No. 1-1 at 12.) Alam worked and paid taxes. His other daughter married a U.S. citizen, became one herself, and produced a U.S. citizen grandchild. His two other children—the daughter in need of medical care and a son—received protection under Deferred Action for Childhood Arrivals (DACA). (*Id.*)

In December 2017, Alam again applied for a stay of removal (Doc. No. 1-2 at 7), but the government departed from its previous course. In a letter dated January 29, 2018, the ICE field office director, Patrick Contreras, recounted the history of Alam's case and the justifications for prior stays, but without explanation, Contreras concluded that a stay was "not warranted at this time." (Doc. No. 1-1 at 79–80.)

Alam had last reported to ICE in August 2017 and was told then to come back in August 2018. (Doc. No. 1-2 at 145.) But after his stay of removal was discontinued, he received a letter instructing him to appear on March 2, 2018.[2] (*Id.* at 147.) When Alam appeared on March 2, ICE "verbally cancelled" the Order of Supervision under which he had been living and took him into custody. (Doc. No. 8-2 at 2.) His counsel filed the pending habeas petition that same day. (Doc. No. 1.)

As Alam was pursuing renewal of the stay, he was also working to obtain an adjustment of his status. (Doc. No. 1 at 4.) His U.S. citizen daughter had filed a visa petition on his behalf, which was approved on February 2, 2018. (*Id.*) On this basis, Alam returned to the Board and filed a motion to reopen his case, on which the Board had last ruled more than a decade earlier.

---

[2] The letter bore the insignia of U.S. Citizenship and Immigration Services, not ICE, and directed Alam to appear at the "Houston District Office Non Detained Duty Window." "INTERVIEW" was the reason given for the appearance. The letter was signed by Contreras, whose title in this instance simply was "Field Office Director," with no mention of ICE. (Doc. No. 1-2 at 147.) Alam notes these oddities but does not ground his claims on their potential to mislead.

(Doc. No. 1-1 at 5.) Alam's motion, filed on February 9, sought an emergency stay of removal and invoked the Board's authority to reopen proceedings *sua sponte* "in unique situations where it would serve the interest of justice." (*Id.* at 7.) The Board denied his request for an emergency stay on March 19; his motion remains pending before the Board. (Doc. No. 17 at 9.)

II

Alam's petition relies on the regulations that govern ICE's authority to revoke orders of supervision and return immigrants to detention. (Doc. No. 1 at 6.) Alam cites 8 C.F.R. § 241.13, which "establishes special review procedures for those aliens who are subject to a final order of removal and are detained … [but] where the alien has provided good reason to believe there is no significant likelihood of removal … in the reasonably foreseeable future." *Id.* § 241.13(a). Alam charges that "ICE acted beyond the scope of its regulatory framework." (*Id.*)

Respondents argue that a provision of the REAL ID Act, 8 U.S.C. § 1252,[3] strips this Court of jurisdiction to consider Alam's claim. (Doc. No. 10 at 5.) "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Accordingly, the Court must determine whether Respondents' interpretation of the REAL ID Act is correct.

The statute addresses judicial review of final orders of removal. It provides that "a petition for review filed with an appropriate court of appeals … shall be the sole and exclusive

---

[3] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) enacted this provision. In *INS v. St. Cyr*, the Supreme Court construed it not to deprive district courts of habeas jurisdiction over challenges to the Attorney General's use of discretion in deportation proceedings. 533 U.S. 289 (2001). Congress then amended 8 U.S.C. § 1252 in the REAL ID Act of 2005 to include habeas corpus in the jurisdiction-stripping provisions.

5

means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute makes expressly clear that this limitation applies to habeas corpus. *Id.* "[A]ll questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States," are consolidated in this single review. *Id.* § 1252(b)(9). "[N]o other court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." *Id.* § 1252(g).

As all-encompassing as those provisions may seem, the Supreme Court has noted their limitations. Section 1252(g) does not "cover[] the universe of deportation claims." *Reno v. American-Arab Anti-Discrim. Cmte.*, 525 U.S. 471, 482 (1999). Rather, "it applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original). "There are of course many other decisions or actions that may be part of the deportation process." *Id.*

Habeas challenges to immigrant detention are among the claims that lie outside Section 1252(g)'s scope. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Jennings*, the Supreme Court considered whether certain immigrants, detained during removal proceedings, were entitled to periodic bond hearings. 138 S. Ct. at 836. Justice Alito observed that the petitioners were not asking for orders of removal or any aspect of their removal proceedings to be reviewed. *Id.* at 841 (plurality opinion).[4] He rejected characterizing the petitioners' claims as arising from their removal proceedings, because such an "expansive"

---

[4] Only two other justices joined this part of Justice Alito's opinion. The Court's three dissenters, however, would have granted relief to the petitioners. 138 S. Ct. at 859. With only Justices Thomas and Gorsuch taking the view that no jurisdiction existed, and with Justice Kagan recused, a 6–2 majority therefore favored the conclusion that Section 1252 did not deprive the courts of jurisdiction.

6

and "extreme" interpretation would yield "staggering results." *Id.* at 840. It "would make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, jurisdiction existed to consider the petitioners' challenge. *Id.* at 841.

Likewise, in *Zadvydas*, the Supreme Court considered whether immigrants subject to final orders of removal could challenge their detention. 533 U.S. at 686. The government would ordinarily detain them for a "removal period" of ninety days after the orders of removal were entered, and statute permitted detention thereafter under certain circumstances. *Id.* at 682 (citing 8 U.S.C. § 1231(a)(6)). The petitioners faced the prospect of indefinite detention because the particulars of their cases made removal unlikely. *Id.* at 683–86. Noting that the petitioners challenged only their detention, not their removal, the Court found that no statute deprived it of habeas jurisdiction. *Id.* at 687–88.

So too here. Alam is clear that he does not challenge the order of removal entered against him in 2004 and affirmed by the Board in 2005. Rather, his claim is against the process that ICE followed in cancelling his Order of Supervision and returning him to detention. (Doc. No. 1 at 6.) District courts have habeas jurisdiction to consider such claims. *See, e.g.*, *Rombot v. Souza*, 2017 WL 4812037 (D. Mass. Oct. 25, 2017) ("Even after the REAL ID Act, however, the district court holds jurisdiction to review habeas challenges to unlawful immigration detention."); *Rombot v. Souza*, 2017 WL 5178789 (D. Mass. Nov. 8, 2017) (granting relief to an immigrant detained in violation of 8 C.F.R. § 241.4).

That jurisdiction exists to consider a claim, however, does not necessarily mean the claim is meritorious. As noted, Alam invokes 8 C.F.R. § 241.13, but this section of the regulations does not apply to him. Section 241.13 concerns the specific class of immigrant detainees for whom

7

there is "no significant likelihood of removal … in the reasonably foreseeable future." *Id.* § 241.13(a). That section specifies the processes by which such immigrants should be released from custody. *Id.* § 241.13(d)–(h). It also constrains ICE's authority to revoke their release and return them to custody. *Id.* § 241.13(i). Removal is not "reasonably foreseeable" in cases "where no country would accept the detainee, the country of origin refused to issue the proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time." *Clarke v. Kuplinski*, 184 F. Supp. 3d 255, 260 (E.D. Va. 2016). Nothing in Alam's filings suggests that any such barrier now stands or ever stood in the way of his removal.

If not 8 C.F.R. § 241.13, what governs Alam's case? As noted, after an order of removal is entered, the Attorney General has ninety days to remove the person and must detain the person during that period. 8 U.S.C. § 1231(a)(1)–(2). The statute defines three points in time at which the removal period may be considered to start: "(i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Respondents contend that Alam currently is in the removal period, asserting that Alam's "most recent removal period began on March 2, 2018, which is the latest date his supervised release was revoked." (Doc. No. 10 at 8.) This argument is meant to head off a claim from Alam under *Zadvydas* that his detention has continued for an unlawfully long time, but it is inconsistent with the statute's text. Alam's current detention,

coming more than a decade after his final order of removal was entered, quite plainly comports with none of these three options in the text.

Rather, Alam's current detention is best understood as occurring "beyond the removal period," per 8 U.S.C. § 1231(a)(6). It is thus subject to 8 C.F.R. § 241.4. That regulation specifies a process for detaining people beyond the removal period and for releasing them thereafter. *Id.* § 241.4(d)–(k). It also specifies a process for returning a person, once released, back to detention. *Id.* § 241.4(l).

The regulation prescribes in considerable detail a set of custody reviews, release procedures, and other processes, but through that forest has been cut that short and straight path for immigrants whom the government is ready and able to remove. ICE officials can revoke a person's release when, in their discretion, "[i]t is appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii). In turn, the possibility of "prompt removal" suspends the custody reviews that the regulation otherwise requires. *Id.* § 241.4(k)(3). No procedure in this regulation creates a basis for Alam to challenge his current detention. Accordingly, Alam's attempt to deploy regulations against his current detention fails.

III

Amici, the American Civil Liberties Union Foundation, the ACLU Foundation of Texas, and the American Immigration Council, advance a different theory of this Court's jurisdiction. (Doc. No. 20.) Rather than stake their theory on the regulations governing ICE's release, revocation, and detention decisions, amici focus on Alam's motion to reopen, which is pending before the Board. They highlight a problem with the Board's handling of motions to reopen. The Board can stay removal while an immigrant's motion to reopen is pending. The circuit courts of

appeals can as well, but they have jurisdiction to do so only after the Board has ruled on the merits of the motion. If the Board denies a stay without ruling on the merits, there is a gap in coverage. Nothing would prevent immigration authorities removing the immigrant even as his or her motion remains pending. Amici urge this Court and other district courts to fill the gap, staying removal until the Board reaches a merits decision on the motion to reopen. (*Id.* at 7–8.)

The problem, as Respondents note (Doc. No. 22), is that the REAL ID Act would seem to foreclose a district court staying removal in this way, given that it deprives district courts of "jurisdiction to hear any cause or claim … arising from the decision or action by the Attorney General to … execute removal orders." 8 U.S.C. § 1252(g). Amici cite numerous decisions by district courts that nevertheless stay removal to permit resolution of motions to reopen. Some courts have ruled that Section 1252 does not strip them of jurisdiction. *See Sied v. Nielsen*, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018); *Chhoeun v. Marin*, 2018 WL 566821 (S.D. Cal. Jan. 25, 2018); *Gbotoe v. Jennings*, 2017 WL 6039713 (N.D. Cal. Dec. 6, 2017); *Devitri v. Cronen*, 290 F. Supp. 3d 86 (D. Mass. 2017). Others have ruled that Section 1252 does strip them of jurisdiction but thereby violates the Suspension Clause of the U.S. Constitution. *See Ibrahim v. Acosta*, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018); *Hamama v. Adducci*, 258 F. Supp. 3d 828 (E.D. Mich. 2017).

Some of these cases arise from the federal government's recent efforts to deport religious minorities back to countries where they face the risk of violent persecution. *E.g.*, *Devitri*, 290 F. Supp. 3d at 86 (Indonesian Christians); *Hamama*, 258 F. Supp. 3d at 832 (Iraqi Christians and others). Others concern petitioners likely to face violence upon deportation for other reasons. *E.g.*, *Ibrahim*, 2018 WL 582520 at *2 (Somalis at risk from the "extremist fundamentalist group" Al-Shabaab due to their time residing in the West). These petitioners invoke the statutory right to

file a motion to reopen asylum claims based on changed conditions in the countries to which they face removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). If removed, they would be attempting to litigate their motions from the very countries where their lives and freedom are in jeopardy. A stay of removal ensures that the statutory right to file those motions is meaningful.

Alam's motion to reopen, by contrast, rests on the Board's *sua sponte* authority to reopen cases. Regulations give Immigration Judges and the Board the authority to reopen or reconsider any case at any time. 8 C.F.R. § 1003.23(b)(1) (Immigration Judges); *id.* § 1003.2(a) (Board). A so-called "regulatory motion to reopen" is not the same as a "statutory motion to reopen." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 342 (5th Cir. 2015). The latter is a right, guarded by various protections, while the former is akin to an act of grace. The difference is evident, for instance, in whether denial of the motion is subject to judicial review. The Supreme Court has ruled that denials of statutory motions to reopen are subject to judicial review. *Kucana v. Holder*, 558 U.S. 233, 253 (2010). The circuit courts, however, have agreed that denials of regulatory motions to reopen are not. *Id.* at 251 n.18. Similarly, the "departure bar" regulations, which cut off consideration of motions to reopen once immigrants are deported,[5] have been invalidated as to statutory motions to reopen. *Garcia-Carias v. Holder*, 697 F.3d 257, 264–66 (5th Cir. 2012). They do apply to regulatory motions. *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675–76 (5th Cir. 2003).

Consequently, amici's reasoning does not hold up when applied to regulatory motions to reopen. Though much is at stake, a statutory right is not. Moreover, a circuit court could not review a denial of the motion, so it is not the case that a gap exists between the Board's power and the circuit court's power to stay removal. In the event a regulatory motion is denied, the latter power never comes to be.

---

[5] 8 C.F.R. § 1003.2(d) (departure bar for the Board); *id.* § 1003.23(b)(1) (departure bar for Immigration Judges).

Thus, the reasoning of the district court decisions cited above, however persuasive in their contexts, does not establish this Court's jurisdiction over the present case, nor does it justify denying Respondents' Motion to Dismiss.

***

Petitioner Syed Mueed Alam has not identified a valid basis for challenging the legality of his current detention. Accordingly, this Court must **GRANT** Respondents' Motion to Dismiss. The stay that it previously entered (Doc. No. 9) is hereby **VACATED**. Owing to the possibility that Alam's removal is not speedily effected and a basis for challenging his detention might develop in that event, Alam's petition is **DISMISSED WITHOUT PREJUDICE**.

Finally, the Court observes that Respondents retain considerable power over Alam's fate. That power had been exercised humanely, if not by Respondents, then by their predecessors in office across two presidential administrations. A compassionate and sensible decision is still possible here. The Court cannot order it, but it can—and strenuously does—encourage it.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 9th day of May, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE